UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANTONIO CONNER,

      Petitioner,

-vs-                                                    Case No.  8:14-cv-2829-T-27JSS

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.
_____/

## ORDER

Petitioner, a Florida inmate filed a Petition for Writ of Habeas Corpus under 28 U.S.C. §

2254, challenging his 2012 conviction for robbery with a firearm in Hillsborough County, Florida

(Dkt. 1), which Respondent opposes (Dkt. 6). Upon consideration, the petition is DENIED.

## PROCEDURAL HISTORY

Petitioner was charged with robbery with a firearm (Respondent's Ex. 1, Vol. V, record pp.

194-97).[1]  Before trial, Petitioner filed a motion to suppress Deputy William Sims' out-of-court and

in-court identification of him(Id., Vol. I, record pp. 28-34). The motion was denied after an

evidentiary hearing (Id., Vol. IV). Petitioner was found guilty of robbery with a firearm and

sentenced to life as a prison release reoffender (Id., Vol. I, record p. 79;  80-94).

On appeal, his appellate counsel filed an *Anders* brief,[2] concluding that there was no

meritorious basis for a claim of significant reversible error (Respondent's Ex. 2). The state appellate

court affirmed without discussion (Respondent's Ex. 6); *Conner v. State*, 136 So.3d 599 (Fla. 2d

---

[1]Anderson was also charged with possession of cocaine with intent to sell or deliver (Id.).

[2]*See Anders v. California*, 386 U.S. 738 (1967).

DCA 2014) [table]. Thereafter, Petitioner filed a petition in the appellate court alleging ineffective

assistance of appellate counsel (Respondent's Ex. 11). That court denied the petition (Respondent's

Ex. 13). In his federal habeas petition, Petitioner raises a single ground for relief:

> Appellate counsel was ineffective in failing to argue that the trial court abused its
> discretion when it denied his motion to suppress the out-of-court and any in-court
> identification of him by Deputy Sims.

## STANDARDS OF REVIEW

### Standard of Review Under the AEDPA[3]

Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution

or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d), which sets forth a

highly deferential standard for federal court review of a state court adjudication, provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant
> to the judgment of a State court shall not be granted with respect to any claim that
> was adjudicated on the merits in State court proceedings unless the adjudication of
> the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme Court
> of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential

standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court
> to grant a state prisoner's application for a writ of habeas corpus with respect to
> claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may
> issue only if one of the following two conditions is satisfied—the state-court
> adjudication resulted in a decision that (1) "was contrary to . . . clearly established

---

[3]The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214.

Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002).

"As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that [the federal court is] to decide."). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

The purpose of federal review is not to re-try the case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Cone*, 535 U.S. at 693. In other words, "AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state

courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010). *See also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . .") (citations omitted).

As noted, in a decision without a written opinion, the state appellate court denied Petitioner's state habeas petition which alleged ineffective assistance of appellate counsel. That decision is entitled to deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied*, 278 F.3d 1245 (2002), *cert. denied sub nom. Wright v. Crosby*, 538 U.S. 906 (2003). *See also Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

Petitioner has the burden of overcoming by clear and convincing evidence the state court's factual determination. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

**Ineffective Assistance of Counsel Standard**

Claims of ineffective assistance of counsel are analyzed under *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a petitioner to demonstrate both deficient performance by counsel and resulting prejudice. Demonstrating deficient performance "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the

4

Sixth Amendment." *Id.* at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* Moreover, Petitioner must demonstrate that counsel's alleged errors prejudiced him because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691-92. To show prejudice, he must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

If a claim of ineffective assistance of counsel can be resolved on one of the *Strickland* prongs, the other prong need not be considered. 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998) ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds.").

## DISCUSSION

### Ground One

Petitioner contends that appellate counsel was ineffective in failing to argue on direct appeal that the trial court abused its discretion in denying his motion to suppress Deputy Sims' out-of-court identification of him. He argues that the identification was unduly prejudicial because Sims was shown a single photograph of him to obtain the identification.

An appellate claim of trial court error in denying Petitioner's motion to suppress would have

5

been without merit. "To violate due process, an identification procedure used by the police must be unnecessarily suggestive *and* create a substantial risk of misidentification." *Johnson v. Dugger*, 817 F.2d 726, 729 (11th Cir. 1987) (citing *Neil v. Biggers*, 409 U.S. 188 (1972)) (emphasis added). An identification tainted by an impermissibly suggestive identification procedure is admissible if, based on the totality of the circumstances, it nonetheless is reliable. *Biggers*, 409 U.S. at 199. "Factors considered in determining reliability include 'the opportunity to view the witness at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.'" *Johnson*, 817 F.2d at 729 (quoting *Biggers*, 409 U.S. at 199). "These factors are weighed against the corrupting effect of the suggestive identification, as there is no *per se* rule requiring exclusion of an identification merely because it was obtained after unduly suggestive procedures." *Escobar v. McDonough*, No. 1:06-cv-207-MP-AK, 2008 U.S. Dist. LEXIS 111317, 2008 WL 2635565, *7 (N.D. Fla. July 1, 2008) (citing *Manson v. Brathwaite*, 432 U.S. 98, 114-17 (1977)). "The state court's findings on each of the *Biggers* factors are entitled to a presumption of correctness, and [the petitioner must] show[] that those findings were clearly erroneous." *Hawkins v. Sec'y, Fla. Dep't of Corr.*, 219 F. App'x 904, 907 (11th Cir. 2007).

In denying the motion to suppress, the state trial court found that even though it was suggestive to show Deputy Sims only one photograph of Petitioner, under the totality of the circumstances, there was no irreparable risk of misidentification:

> In this case, although the one photograph may concede[dly] [] be suggestive we are dealing with a trained law enforcement officer that has done hundreds of transactions. He had an opportunity to observe a male pointing a gun at him. He paid close attention. He described the defendant after the fact. He gave a valid description that fit the defendant, his characteristics. He instantly recognized the defendant from the

6

still photograph from the video as the man who had held a gun on him within hours of experiencing that event. The Court does not find this was [sic] suggestive one photograph event in any way affected the reliability of this identification. Too many other considerations that support the fact that it was not only reliable but it was accurate. I consider the totality of the circumstances. I don't think it is [sic] suggestive procedure gave rise to a substantial likelihood of irrepa[]rable misidentification according to the case law. Clearly the deputy had an opportunity to view the defendant at the time of the crime. He was paying attention. He obviously described immediately after. He was very certain, a hundred percent certain this was the man who held a gun and he made the identification within hours after the event. He is a trained law enforcement officer. I will deny the motion.

(Respondent's Ex. 1, Vol. IV, record pp. 42-43).

Petitioner has not demonstrated that the state trial court's findings were clearly erroneous. Deputy Sims testified that he was an experienced undercover officer who had conducted several hundred undercover operations after which he was required to identify the perpetrators (Id., record p. 109). He was only "four or five feet" from Petitioner when he saw him, and "looked into his face" before he "looked down" and saw Petitioner holding a gun (Id., record p. 111). He observed Petitioner for 20 to 25 seconds, paying close attention to him because he was holding a gun (Id., record p. 112). He observed that Petitioner was a black male, shorter than him, and "thin and muscular." (Id.). When Deputy Lazou showed Sims the photograph of Petitioner a few hours later, Sims' "immediate reaction" was that the man in the photograph was the same man who held the gun during the drug transaction (Id., record p. 113). Two days later, after Petitioner was arrested, Sims observed Petitioner talking to another detective and he "had no question" that Petitioner was "the guy that could have took [sic] [his] life." (Id., record p. 114).

Deputy Sims therefore had a good opportunity to view Petitioner closely during the robbery, observed him for approximately 25 seconds, looked at his face, and was able to accurately describe his other features. During the robbery, Sims' attention was focused on Petitioner because he was

holding a gun. And he was certain of his identification of Petitioner, both at the time he was shown the photograph a few hours after the incident, and two days later when he saw Petitioner at the police station.

Considering these circumstances, even if the single photograph identification procedure was unduly suggestive, there was no substantial likelihood of irreparable misidentification that would have led to the exclusion of Deputy Sims' in court identification of Petitioner. Since the motion to suppress was without merit, Petitioner cannot demonstrate that appellate counsel performed in an objectively unreasonable manner in not challenging the denial of that motion. *See United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000) ("Appellate counsel is not ineffective for failing to raise claims 'reasonably considered to be without merit.'") (quoting *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir.1984)).[4] In sum, (Id., Vol. I, record p. 79; . Petitioner has not shown deficient performance.

Moreover, Petitioner has not demonstrated that even if appellate counsel should have challenged the trial court's ruling, a reasonable probability exists that, but for counsel's unprofessional errors, the result of the appeal would have been different.

Petitioner has failed to demonstrate that the state appellate court's denial of this claim was contrary to, or involved an unreasonable application of, clearly established federal law, or was based

---

[4]Additionally, even if the state trial court erred in denying Petitioner's motion to suppress Deputy Sims' identification testimony, "trial court errors are subject to the harmless error analysis and will not be the basis of federal habeas relief unless the error 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Sims*, 155 F.3d at 1312 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)). In light of other evidence showing Petitioner's involvement in the armed robbery, including co-defendant Anderson's identification testimony (Respondent's Ex. 1, Vol. II, transcript pp. 209-30), and the recordings of phone calls made by Petitioner from jail in which he made incriminating statements (Id., Vol. III, transcript pp. 344-51), Deputy Sims' identification testimony did not have a substantial and injurious effect or influence on the jury verdict.

on an unreasonable determination of the facts in light of the evidence presented. Accordingly, Ground One does not warrant relief. Petitioner's Petition for Writ of Habeas Corpus (Dkt. 1) is therefore **DENIED**. The **Clerk** shall enter judgment against Petitioner, terminate all pending motions, and close this case.

Further, Petitioner is not entitled to a certificate of appealability (COA). He does not have the absolute entitlement to appeal the denial of his habeas petition. 28 U.S.C. § 2253(c)(1). Rather, a COA must first be issued. Id. He is entitled to a COA only if he demonstrates that reasonable jurists would find debatable whether his § 2254 petition stated "a valid claim of the denial of a constitutional right." Id.; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). To make a substantial showing of the denial of a constitutional right, he "'must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong,'" *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack*, 529 U.S. at 484), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). Petitioner cannot make this showing,because he cannot demonstrate that reasonable jurists would debate whether the petition stated a valid claim of the denial of a constitutional right And since he is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE and ORDERED** this 9th day of January, 2017.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Petitioner *pro se,* Counsel of Record